13114

SOUTH CAROLINA SAVINGS BANK AS RECEIVER v. STANSELL

(158 S. E., 131)

May, 1930.

*Messrs. Mauldin & Love,* for appellant,

*Mr. James M. Richardson,* for respondent,

April 10, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

About twelve years ago Mrs. Lula Ann Stansell and four of her children who were above the age of 21 years, mortgaged their "interests" in 48 acres of land located in Greenville County to the People's Bank of Fountain Inn. This property had been deeded to her by one J. J. Slaton, her father, "for the term of her natural life and at her death to her bodily heirs and their heirs and assigns." The mortgage came into the hands of the South Carolina Savings Bank, as receiver for the People's Bank, and the mortgagors, being unable to pay the debt, conveyed by deed to the savings bank as receiver, in settlement of the claim, their "interests" in the premises. The bank thereupon went into possession of the land, claiming, under the deed, to be the owner of an estate in the entire premises for the life of Mrs. Stansell and to be a tenant in common, as to the fee, with her remaining six children. It brought an action against the six

children, some of whom are minors, for the purpose of compelling partition among the owners of the fee. The complaint sought also that the "interest" which the plaintiff acquired from the life tenant, Mrs. Stansell, "should be determined by the laws of this State, laid down in such cases." The defendants were all served; and all answered the complaint, the minor defendants by their properly appointed guardian *ad litem.*

The case was referred to the master, who found and reported that the property was in a run-down condition and was deteriorating badly, owing to the fact that the life tenant was unwilling to make any repairs and the remaindermen were not in possession of the premises. He concluded that the plaintiff, under Section 5292 of Volume 3 of the Code of 1922, was entitled to the relief prayed for, and recommended sale of the property for a division. To this report no exception was taken.

On October 18, 1929, Judge Henry passed an order, consented to by all parties, including the attorney representing the guardian *ad litem* of the infant defendants, which provided for the sale of the lands and a division of the proceeds among the parties in interest, fixing the value of the life estate at $1,000.00 as found by the master. Under this decree, the premises were advertised and offered for sale on sales' day in November, 1929, and were bid off for $2,-150.00 by one F. M. Stansell, who, however, refused to comply with his bid. The plaintiff thereupon secured an order from Judge T. J. Mauldin directing Stansell to show cause why he should not be required to comply. He made return to the rule, alleging that he had purchased the tract of land in good faith, but did not believe the master could convey good marketable title thereto for the following reasons: (1) That the plaintiff was without authority to maintain the action in partition and to have the lands sold for such purpose during the lifetime of Mrs. Lula Ann Stansell; and (2) that the fixing of the value of the life estate at

$1,000.00 was inequitable and unjust to the minor defendants and deprived them of their valuable estates in the land.

Upon a hearing of the matter, Judge Mauldin concluded that the plaintiff, under Section 5292 of the Code, had a right to maintain the action, and that the partition had was fair and to the best interest of all parties, including the minor defendants. He therefore held the return to be insufficient, and directed compliance with the bid. From this order Stansell appeals.

Under the early common law of England, the right of partition was confined altogether to lands held in parcenary, and, as parceners acquired title by inheritance only, the right extended to estates in fee alone. 21 Am. & Eng. Ency. of Law 1145. Later, however, under the Statutes of 31 and 32 Henry VIII, the remedy was extended to joint tenants and tenants in common of estates of inheritance, of freehold, or for years. The early common law, thus modified, became a part of our common law, and was recognized by colonial statutes. The general rule now is that every cotenant may demand partition as a matter of right, if there is a present right of possession. 20 R. C. L., 743.

In 47 C. J., 336, the writer says: "In the absence of positive statutory authorization * * * one having an estate for years or for life in the property sought to be partitioned cannot maintain an action for partition thereof, either in kind or by sale for division against the remaindermen or reversioners."

At page 344 of the same volume, we find: "In the absence of special statutory authorization, remaindermen or reversioners are not entitled to maintain proceedings at law or in equity for partition either in kind or by sale for division against a tenant for years, or against one who has a life estate in the entire property, even though such life tenant has also an undivided interest in remainder."

In 20 R. C. L. at page 747, it is said: "The more difficult question is, where there are two cotenancies, one of the es-

tate in possession and the other of an estate in reversion, whether a cotenant of either by acquiring a moiety of the other, and thus becoming an owner of a moiety in fee, may compel partition of both estates and thus acquire title in fee and in severalty. In some of the States he doubtless can, but the right to do so is statutory, and, in the absence of statutes creating it, does not exist. Of course partition may be made by suit where all the parties consent, though some of them might, from the nature of their estate, resist with success; therefore if a life tenant consents to a partition or sale of the property by remaindermen and to take the value of his life estate in money, and, if it appears to the Court that it will not be to the prejudice of the other parties in interest, a partition and sale may be had."

It is clear, from the foregoing general principles, that the plaintiff in this case, in the absence of statutory authorization, could not maintain its action in partition. It claims, however, that such authority is given by Section 5292 of the Code, which reads as follows: "All joint tenants and tenants in common, and every of them, which now hold or hereafter shall hold, jointly or in common, for term of life, year or years, or joint tenant or tenants in common, where one or some of them have or shall have estate or estates for term of life or years, with the other that have or shall have estate or estates of inheritance or freehold in any lands, tenements, or hereditaments, shall and may be compellable to make severance and partition of all such lands, tenements and hereditaments, which they hold jointly or in common for term of life or lives, year or years, where one or some of them hold jointly or in common for term of life or years with other, or that have an estate or estates of inheritance or freehold."

This statute was passed many years ago, and, while its wording is somewhat involved and confused, it was no doubt intended as a recognition of the common law, as modified and extended under the statutes of 31 and 32 Henry

VIII. We do not find, from an examination of our decisions, that the exact question here raised has been passed upon by this Court, but a review of some of the cases may be helpful. We may say here that we have been unable to find another statute exactly like ours, and for that reason a discussion of the decisions in other jurisdictions would not be profitable.

*Lorick & Lowrance v. McCreery*, 20 S. C., 424, was a case in which one John Glymph died intestate, leaving a tract of land, which he owned in fee. One of his heirs at law, Laura E. Blackwell, conveyed to her sister, Sarah E. Blackwell, a life estate in her undivided interest, the fee in such interest afterwards passing to Lorick & Lowrance, who purchased it at a sheriff's sale. The situation then was : Sarah E. Blackwell and her two brothers each had an undivided interest in fee in the land, unincumbered by a life estate; Sarah had also a life estate in the undivided interest that had been Laura's, with Lorick & Lowrance as the owners of the fee in that interest. Under this state of facts, the Court held that Lorick & Lowrance were entitled to maintain an action for partition, "If said partition can be made consistently with the interests of all parties and without detriment to the interests and claims of the life-tenant."

*Varn v. Varn*, 32 S. C., 77 ; 10 S. E., 829, was a case in which one Chitty deeded to six persons a life estate in a tract of land ; the fee remained in him, subject to the enjoyment of the life estate by the grantees, and upon his death descended to his heirs. One Varn purchased the fee from most of the heirs. Four of the life tenants died; no partition having been made. A partition suit was instituted by Varn against the other tenants in fee and the two remaining life tenants, and was resisted by one of the life tenants. The Court held that Varn was entitled to maintain the action; the reasoning being that partition of the life estate was compellable at any time among the holders thereof as tenants in common, each taking one-sixth in severalty, any one-sixth, in case of death of the holder, going at once to the

owners of the fee; that the fact that no partition had taken place among the tenants for life could make no difference; that, at the death of each one of the four, the fee was disincumbered to the extent of his interest, that is, one-sixth; that each of the survivors was entitled to his one-sixth for life; but no more; and that the owners of the fee would be entitled at once to the balance of the land, which could be enjoyed only by partition.

*Cannon v. Lomax,* 29 S. C., 369, 7 S. E., 529, 1 L. R. A., 637; 13 Am. St. Rep., 739, was a case in which a father died leaving to his children a tract of land, which, prior to his death, he had leased to two of his sons for a period of ten years. Action was brought by the other children against these two, asking for partition. The two lessees, who were also tenants in common with the other children as owners of the fee, set up their lease and opposed the partition, on the ground that they, as lessees, were entitled to the possession and enjoyment of the whole property until the expiration of the lease. On appeal, this Court held that the action for partition was premature and that no suit would lie for the purpose of division of the land among the owners of the fee until the lease had terminated.

At the time these cases were decided, the statute upon which the plaintiff in the present action relies had long been in existence, and no doubt the Court had it in mind in reaching the conclusion in each case. In the *McCreery case* the Court held, without giving any reasons, that the owner of the fee in an undivided interest incumbered by a life estate would have the right to have the portion in which he held the fee severed from the undivided interests not incumbered by a life estate, though his interest would still be subject to the life estate with which it was incumbered. In the *Varn case* it was decided that, where a life estate in real property is held by several persons as tenants in common, partition of such estate may be compelled by any of such tenants at any time; and where no partition is had among them, and one or

more of them die, the person in whom the fee in the entire tract of land is vested may compel partition as against the living life tenants, in order that he may have immediate possession and enjoyment of that portion of the property which is no longer incumbered by a life estate. But it was also held that, in such proceeding, each of the living life tenants would be entitled to possession and enjoyment for life of whatever interest he had in the estate, and that such portion should be set off to him in the partition proceedings. In the *Lomax case,* it was held that, where there is a particular estate, such as an estate for years, or a life estate as in the present case, and the entire property is incumbered by such estate, tenants in common of the fee, not being entitled to immediate possession, cannot maintain action for partition even though the owner of the particular estate has an undivided interest in fee in the property.

In the *Varn* and *McCreery cases,* where the right to maintain suit for partition was sustained, the life estate did not incumber the entire property, while in the *Lomax case,* where the right to partition was denied, a different situation was presented, in that the whole property was incumbered by a particular estate. It would appear, therefore, upon consideration of the statute and these interpretative decisions, that if, in the case at bar, one of the tenants in common of the fee, other than the bank, had brought an action for partition against the bank, the latter could have successfully resisted it as the owner of the life estate in the entire property and for that reason entitled to possession of the whole until the termination of the life estate. However, the bank itself brought the action as one of the tenants in common of the fee, alleging also its consent, as the owner of the life estate, to such partition, and asking that the value of the life interest be determined and protected. The adult defendants consented to a decree of partition, fixing the value of the life estate and directing a sale of the property and distribution of the proceeds, and they are bound

thereby. Therefore the only question to be determined, as appellant appears to concede, is whether the rights of the infant defendants were properly protected. In their argument, his counsel say: "It is conceded that a deed from the Master will convey the life estate and the interests of the adult remaindermen as well as the remainders held by the life tenant, as all these consent to the sale, but the record does not show that the minor remaindermen are being properly protected."

It is true that, if the interests of minors are not properly protected in a suit, this Court will set aside the proceedings. *McIver v. Thompson,* 117 S. C., 175, 108 S. E., 411; *Cagle v. Schaefer,* 115 S. C., 35, 104 S. E., 321.

Judge Mauldin, in his order in the present proceeding, says: "All minors were properly before the Court and represented not alone by a guardian *ad litem,* but by an able attorney as well. The testimony shows that the lands were in a badly run-down state, with the buildings needing repair. From rents being received by the life tenant these repairs could not be made and the property seems near the point of being abandoned. This would not only render the estate of the life tenant worthless, but very greatly lessen the value of that of the remaindermen, some of whom are minors. The Master finds, and I agree with him, and so hold, that it would be for the best interests of the minors for the lands to be sold as previously ordered. Question, however, is raised as to the amount to be paid the life tenant for its estate. The method used by the Master in determining this amount seems fair and proper, in view of the facts of this case. It will be found that after paying the life tenant One Thousand ($1,000.00) Dollars, as provided in Judge Henry's order, there would, from the bid price of the land, remain a balance of Eleven Hundred Fifty ($1,150.00) Dollars to be divided among the remaindermen. The life expectancy of the life tenant is 16.72 years, and if the Eleven Hundred Fifty ($1,150.00) Dollars be invested at seven

(7%) per cent. interest for that period it would produce Thirteen Hundred, Forty-five Dollars, Ninety-six Cents ($1,345.96), which is much more than the value fixed for the life estate. The minors being remaindermen are seen to profit, rather than to be hurt by this arrangement."

With respect to the disposition of the proceeds of a partition sale of property incumbered by a life estate, the approved rule is that, in the absence of a statute otherwise providing, the owner of the life estate is not entitled to have the present value of such estate paid him, but only the income from the proceeds during the continuance of such estate. In other words, he is entitled to the use only of the property, whether lands or money, and not to any portion of the corpus. Where the property is sold for partition, the proceeds should therefore be invested for the benefit of the owner of the life estate and the income paid him until the falling in of such estate, upon which event the proceeds should be disbursed among those entitled thereto.

If, however, all the parties to the action agree that the owner of the life estate be paid the present cash value thereof, there appears no good reason why this should not be done. The basis of such value, however, should be the earning power of the proceeds, and not the rental value of the land. In the present case, the Master used the rental value of the land as a basis for ascertaining the value of the life estate, applying the mortuary table appearing at page 291 of Volume 1 of the 1922 Code. Mrs. Stansell was 56 years old, and her life expectancy, as fixed by that table, was 16.72 years. It was ascertained from the testimony that for such period the rental value of the place would be $1,672.00, which, when converted into a present cash value, was about $1,200.00; but, in order not to overestimate it, the Master fixed the value at $1,000.00. It does not appear that any of the parties to the action opposed the disposition of the life estate in this manner; the adult defendants are bound by their consent to the value fixed, and the Court, concluding

that it would be to the best interest of the minor defendants that the life estate be so disposed of, approved the consent of the guardian *ad litem* to the decree.

While the computation of the value of the life estate was made on an erroneous basis, it resulted more favorably to the minor defendants than a computation on the correct basis or a disposition of the proceeds according to the approved rule. Accordingly, while adhering to the announced rule as to the investment of the proceeds and the payment to the holder of the life estate of the income therefrom, etc., this Court will not interfere, under the facts of this case, with the disposition made of the life estate. It follows that a deed from the Master will convey good title to the premises as against all parties to the action in partition.

For the reasons herein stated, the order appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN and CARTER concur.