## UNITED STATES v. 15,883.55 ACRES OF LAND, SITUATE IN SPARTANBURG COUNTY, SOUTH CAROLINA et al.

### No. 203.

District Court, W. D. South Carolina, Spartanburg Division.

July 7, 1942.

Horace L. Bomar, Jr., Sp. Asst. to the U. S. Atty., of Spartanburg, S. C., for petitioner.

C. Y. Brown and Sam N. Burts, both of Spartanburg, S. C., for defendant C. A. Fleming.

H. E. DePass, Jr., of Spartanburg, S. C., for defendant Buddy Fleming.

Osborne, Butler & Moore, of Spartanburg, S. C., for Spartanburg County.

WYCHE, District Judge.

A petition was filed in the above condemnation proceeding to determine the respective interests of C. A. Fleming, Pearl Lee Jennings, nee Fleming, Della Robert, nee Fleming, Miles Fleming and Buddy Fleming, in and to the compensation award to be paid by the United States for Tract No. 185-B in the Range Area, Camp Croft, South Carolina.

The matter is before me upon exceptions to the report of Special Master J. R. Flynn, Esq.

On November 22, 1909, Miles Fleming conveyed to Pearl Lee Jennings, Della Robert and Buddy Fleming the tract of land involved in this proceeding, reserving unto himself a life estate. Miles Fleming is now eighty years old and in poor health. On May 2, 1930, a deed purporting to have been executed by Pearl Lee Jennings and Della Robert, conveyed to C. A. Fleming, in consideration of one hundred, seventy-

five ($175) dollars, their two-thirds undivided interest in the remainder in said tract of land. Pearl Lee Jennings and Della Robert contend that such deed is null and void because, (1) it was a forgery; (2) there was a failure of consideration; and (3) there was no delivery.

The Special Master decided that there was no merit in the contentions of Pearl Lee Jennings and Della Robert, and found that the compensation award for the tract of land involved should be disbursed as follows: (1) to the payment of all costs and expenses of this action; (2) after payment of costs, one-sixth to the life tenant; (3) two-thirds of the remainder to the petitioner C. A. Fleming, and one-third to the defendant Buddy Fleming.

Pearl Lee Jennings and Della Robert filed no exceptions to the Special Master's report. However, C. A. Fleming excepted on the grounds, (1) error in finding that the past due taxes should be paid from the remainder interest, as well as the life estate; (2) error in finding that the life estate was valued at one-sixth of the entire fee; that the value of the life estate must be determined by the Mortuary Tables as provided under the Code of Laws of South Carolina, and the value of an estate held by a man eighty years old should be less than one-sixth of the fee.

While the Special Master made no finding as to the payment of the State and County taxes, it is the law in this State that the taxing authorities have no right to enforce the liens for taxes accruing during the lifetime of the life tenant against the interest of the remaindermen, or other than against the interest of the life tenant. Section 2605 of the 1932 Code of Laws of South Carolina, requires lands to be listed in the name of the owner thereof, and provides that all lands shall be "listed and assessed as the property of the person or persons having the legal title to, and the right of possession of, the land at the time of listing and assessment, and in case of persons having possession of lands for life, in the name of the life tenant." This has been construed to extend the lien for taxes levied and assessed during a life tenancy only to the life estate. Taylor v. Strauss, 95 S.C. 295, 78 S.E. 883; Campbell v. Williams, 171 S.C. 279, 172 S.E. 142; Carter v. Wroten, 187 S.C. 432, 198 S.E. 13, 119 A.L.R. 379. Clearly the County and State are entitled to so much of the condemnation award as represents the value of the life tenancy, up to the amount of the taxes, penalties and costs accrued.

In consideration of the second exception it becomes necessary to determine what, under the decisions of the South Carolina Supreme Court, is the value of the life tenancy with respect to the value of the entire fee.

In 1830, in the case of Garland v. Crow's Ex'rs, 2 Bailey, S.C., 24, the Court said: "In contemplation of law an estate for life is equal to seven years' purchase of the fee. To estimate the present value of an estate for life, interest must be computed on the value of the whole property for seven years; and perhaps, interest on the several sums of the annual interest, from the present time to the periods at which they would respectively fall due, ought to be abated. According to this rule, the legal rate of interest being seven per cent. the present value of an estate for life is equivalent to a fraction more than thirty-five parts in a hundred of the value of the absolute estate."

In 1898, in Cain v. Cain, 53 S.C. 350, 31 S.E. 278, 280, 69 Am.St.Rep. 863, in deciding that the value of an advancement, consisting of a vested remainder in real estate, was, in the absence of extreme youth or old age of the life tenant, one-half of the value of the fee, the Court, without noticing the rule in Garland v. Crow's Ex'rs, arrived at this conclusion in the following language: "The value of the estate in remainder is the difference between the value of the estate in fee and the value of the life estate. In the absence of the adoption in this state of any table of life annuities, we see no good reason why the rule, which experience has approved, of assessing the one-sixth of the fee-simple value of the estate in money in lieu of the widow's dower or life estate in one-third, may not be adopted in estimating as an advancement the value of an estate in remainder after a life estate. If a life estate in one-third is valued at one-sixth of the [fee simple value of the] whole, then a life estate in the whole or any definite part may be valued at one-half its fee-simple value. Hence an estate in remainder after a life estate may be valued at one-half of the fee-simple value of the whole. *It may be, in estimating the value of the life estate,* as Judge Nott said, in Wright v. Jennings, 1 Bailey, S.C., 277, 280, in reference to assessing one-sixth of the fee-simple value in lieu of dower, *that 'in extreme cases, of youth on the one hand, or of age and in-*

*firmity, on the other, something, more or less, according to circumstances, may be allowed.'* It might be more scientific to have a rule based on life expectancies and tables of annuities, but, in the absence of legislation, we prefer to follow the rule above stated, which is simple, easy of application, and approximately just."

In 1899, the question was next discussed, but not decided, by the State Supreme Court in the case of Beaty v. Richardson, 56 S.C. 173, 34 S.E. 73, 74, 46 L.R.A. 517. In that case in deciding that a devise to a woman with whom a man lived in adultery was void as to more than one-fourth of the clear value of his estate at the instance of his lawful wife or child, the Circuit Judge held that a life estate was worth more than a one-fourth of the real clear value of the estate, under the rule laid down in the case of Garland v. Crow's Ex'rs, supra, and said: "By that rule the life estate is worth thirty-five per cent., or more than one-third, of the free or entire estate. If we calculate the value of this particular life estate upon the basis of Violet Richardson's expectancy of life, which is thirty-one years, as fixed by the mortality tables, it will be found to be over $1,300, out of an estate whose entire value is only $1,500. The gift to Violet Richardson is therefore void as to so much thereof as exceeds the one-fourth part of the estate left after paying the testator's debts, and the life estate sought to be bestowed upon her falls to the ground." The State Supreme Court in passing upon this phase of the Circuit Judge's decree said, "(2). What is the value of the life estate devised to the defendant Violet [Richardson] the elder? For although the circuit judge does find that the value of such life estate, whether measured by the rule laid down in the case of Garland v. Crow['s Ex'rs], 2 Bailey, [S.C.], 24, or upon her expectancy of life as fixed by the tables of mortality, would exceed one-fourth of the clear value of the testator's estate, he does not find which of these two modes of measurement should be adopted, and, as they differ in the result, the time value must be judicially ascertained, which this court is not at liberty to do, as there is no exception raising the question."

The rule as stated in Cain v. Cain was first mentioned, and cited with approval, in Black v. Harman, 127 S.C. 359, 120 S.E. 705, in 1923, where the Supreme Court decided that under a devise of realty to testator's daughter "to have and to hold to the use of herself and her children during her life, and then to her children absolutely, share and share alike," there was no merger of the life estate of the daughter and the equitable estates of the daughter and her children and the trust was not executed by Civil Code 1922, section 5450, as the daughter had discretionary duties to perform. The Court said in this case, "It was on account of the duty imposed upon the mother to exercise her discretion in disposing of the income for the benefit of herself and children that she was to receive a larger share than the children in the rents and profits. In order, however, to equalize the devises to the mother and children, he gave the children the remainders in all the lands. The method for determining the value of a life estate is thus stated in Cain v. Cain, 53 S.C. 350, 31 S.E. 278, 69 Am.St.Rep. 863." The Court then quotes the rule in the Cain case, except there is omitted the sentences relating to possible variation of the rule in the event of extreme youth or extreme old age.

The Cain case was again mentioned in 1930 in Smith v. Tapp, 154 S.C. 25, 151 S.E. 221; and in 1938, in Bettis v. Harrison, 186 S.C. 352, 195 S.E. 835, but the question of the value of a life estate was not involved in either case.

In South Carolina Savings Bank v. Stansell, 160 S.C. 81, 158 S.E. 131, 134, decided in 1931, the State Supreme Court said: "With respect to the disposition of the proceeds of a partition sale of property incumbered by a life estate, the approved rule is that, in the absence of a statute otherwise providing, the owner of the life estate is not entitled to have the present value of such estate paid him, but only the income from the proceeds during the continuance of such estate. In other words, he is entitled to the use only of the property, whether lands or money, and not to any portion of the corpus. Where the property is sold for partition, the proceeds should therefore be invested for the benefit of the owner of the life estate and the income paid him until the falling in of such estate, upon which event the proceeds should be disbursed among those entitled thereto.

"If, however, all the parties to the action agree that the owner of the life estate be paid the present cash value thereof, there appears no good reason why this should not be done. The basis of such value, however, should be the earning power of the proceeds, and not the rental value of the

786

land. In the present case, the master used the rental value of the land as a basis for ascertaining the value of the life estate, applying the mortuary table appearing at page 291 of volume 1 of the 1922 Code. Mrs. Stansell was 56 years old, and her life expectancy, as fixed by that table, was 16.72 years. It was ascertained from the testimony that for such period the rental value of the place would be $1,672, which, when converted into a present cash value, was about $1,200; but, in order not to overestimate it, the master fixed the value at $1,000. It does not appear that any of the parties to the action opposed the disposition of the life estate in this manner; the adult defendants are bound by their consent to the value fixed, and the court, concluding that it would be to the best interest of the minor defendants that the life estate be so disposed of, approved the consent of the guardian ad litem to the decree.

"While the computation of the value of the life estate was made on an erroneous basis, it resulted more favorably to the minor defendants than a computation on the correct basis or a disposition of the proceeds according to the approved rule. Accordingly, while adhering to the announced rule as to the investment of the proceeds and the payment to the holder of the life estate of the income therefrom, etc., this court will not interfere, under the facts of this case, with the disposition made of the life estate." Cf. Clyburn v. Reynolds, 31 S.C. 91, at page 119, 9 S.E. 973; Green v. Green, 50 S.C. 514, 27 S.E. 952, 62 Am. St.Rep. 846; and Crook v. Hartford Fire Ins. Co., 175 S.C. 42, at page 52, 178 S.E. 254.

In 1903, the General Assembly of South Carolina, passed the Mortuary or Expectancy Table Act in the following words: "In all civil actions or other modes of litigation, whenever it shall be necessary to establish the expectancy of continued life of any person from any period of such person's life, whether he be living at the time or not, the table hereto appended shall be received in all courts, and by all persons having power to determine litigation, as evidence, with other evidence as to the health, constitution and habits of such person, of such expectancy represented by the figures in the columns headed by the words 'completed age' and 'expectation,' respectively." Code of Laws of South Carolina, 1932, section 735.

In 1922, the General Assembly of South Carolina, passed the following Act: "When any interest in property less than estate in fee shall pass by will or otherwise, as set forth in section 2480 to one or more beneficiaries, with remainder to others, the several interests of such beneficiaries, except as they may be entitled to exemption under the provisions of section 2480, shall be subject to said tax [inheritance tax]. The value of the annuity or life estate shall be determined by the actuaries' combined experience tables at 4%, compound interest, and the value of any intermediate estate less than a fee shall be so determined whenever possible." Code of Laws of South Carolina, 1932, section 2481.

From the foregoing it appears that the Supreme Court of South Carolina has decided: (1) A life estate is worth thirty-five per cent. of the free or entire estate. Garland v. Crow's Ex'rs. This rule was discussed in Beaty v. Richardson, but it was neither approved nor disapproved. (2) A life estate is valued at one-half its fee simple value, but it may be in estimating the value of the life estate that in extreme cases of youth, on the one hand, or of age and infirmity, on the other, something more or less, according to circumstances, may be allowed. Cain v. Cain. The rule as stated in this case, even though the value of a life estate was not directly involved, was cited with approval in Black v. Harman, and mentioned without approval or disapproval in Smith v. Tapp, and in Bettis v. Harrison. (3) In the absence of a statute otherwise providing, the owner of a life estate is not entitled to have the present value of such estate paid him, but only the income from the proceeds during the continuance of such estate, and where the property is sold for partition, the proceeds should, therefore, be invested for the benefit of the owner of the life estate, and the income paid him until the falling in of such estate, in which event the proceeds should be disbursed among those entitled thereto. If, however, all the parties to the action agree that the owner of the life estate be paid the present cash value thereof, there appears no good reason why this should not be done. Under such circumstances the basis of the present cash value is the earning power of the proceeds. South Carolina Savings Bank v. Stansell. (4) The mortuary tables were established by an Act of the General Assembly of

South Carolina in 1903, and after the decision in the cases of Garland v. Crow's Ex'rs, Cain v. Cain, and Beaty v. Richardson, and before the decision in the cases of Black v. Harman, Smith v. Tapp, Bettis v. Harrison, and South Carolina Savings Bank v. Stansell. (5) In 1922, the General Assembly of South Carolina passed an Act for inheritance tax purposes, whereby it was provided that the value of a life estate shall be determined by the actuaries' combined experience tables at 4%, compound interest.

From the foregoing I must conclude that the rule in South Carolina is that, unless all parties consent, where property is sold for partition, or likewise taken by condemnation proceedings, the proceeds from the sale, or of the compensation, should be invested for the benefit of the owner of the life estate, and the income paid him until the falling in of such estate, upon which event the proceeds should be disbursed among those entitled thereto. If, however, all parties consent that the present cash value of the life estate be paid to the life tenant, then the present cash value of the life estate must be based upon the earning power of the proceeds. In this case the life tenant is eighty years old; compensation to be paid is the sum of $500, and by the actuaries' combined experience tables at 4%, compound interest, the value of the life estate would be $500 multiplied by .18644, which amounts to $93.22.[1] Section 2481, Code of Laws of South Carolina, 1932. This amount represents the earning power of the proceeds of the compensation to be paid herein in the case of a person eighty years old.

The rule in Cain v. Cain, that a life estate is valued at one-half its fee simple value, but it may be, in estimating the value of a life estate, that in extreme cases of youth on the one hand, or of age and infirmity on the other, something more or less, according to circumstances, may be allowed, has never been expressly overruled by the South Carolina Supreme Court, and was cited with approval in Black v. Harman, before the decision in South Carolina Savings Bank v. Stansell. However, even if I applied the rule in Cain v. Cain, which, in my opinion, has in effect been overruled by the language used in South Carolina Savings Bank v. Stansell, I would take into consideration the extreme old age and in-

firmity of the life tenant and arrive at the same result. Accordingly, I must conclude that the State of South Carolina, and the County of Spartanburg are entitled to receive the sum of $93.22, the present cash value of the life interest of Miles Fleming to be applied to the payment of the accrued taxes, penalties and costs levied and assessed against the interest of such life tenant.

For the foregoing reasons the Findings of the Special Master will be adopted, except as herein modified.

---

[1] By the table referred to, at age 80, the value of a life estate of one dollar is .18644.